**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel.: 212-465-1180
Fax: 212-465-1181
*Attorneys for Plaintiffs, FLSA Collective*
*Plaintiffs and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SANDY YUWONO and UVALDO TORRES, *on behalf of themselves, FLSA Collective Plaintiffs, and the Class,* <br><br> Plaintiffs, <br><br> v. <br><br> JADE EATERY & LOUNGE LLC, KFG HOSPITALITY GROUP LLC, ARUN KUMAR, RICHARD LIAO, and SAM KANDHOROV, <br><br> Defendants. | Case No.: 22-cv-04227 (PGG) (RWL) <br><br> **SECOND AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT** <br><br> Jury Trial Demanded |

Plaintiffs, SANDY YUWONO, and UVALDO TORRES (hereinafter, "Plaintiffs"), on behalf of themselves and others similarly situated, by and through their undersigned attorneys, hereby file this Second Amended Class and Collective Action Complaint against Defendants JADE EATERY & LOUNGE LLC, KFG HOSPITALITY GROUP LLC (the "Corporate Defendants"), ARUN KUMAR, RICHARD LIAO, and SAM KANDHOROV ("Individual Defendants") (each individually, "Defendant" or, collectively, "Defendants") and states as follows:

## INTRODUCTION

1. Plaintiffs allege, pursuant to Fair Labor Standards Act as amended, 29 U.S.C. §§201

1

*et. seq.* ("FLSA"), that they, FLSA Collective Plaintiffs and similarly situated individuals are entitled to recover from Defendants: (i) unpaid wages, including unpaid overtime wages, due to Defendants' invalid tip credit allowance, (ii) unpaid wages, including overtime, due to an impermissible time-shaving policy, (iii) unpaid wages, including overtime due to rounding, (iv) unpaid wages due to compensation on a fixed salary basis, (v) statutory penalties (vi) liquidated damages, and (vii) attorney's fees and costs.

2.    Plaintiffs further allege that, pursuant to New York Labor Law ("NYLL"), they and others similarly situated are entitled to recover from Defendants: (i) unpaid statutory minimum wage and proper overtime due to Defendants' invalid tip credit allowance, (ii) unpaid spread of hours premium for each workday that exceeded ten (10) or more hours, (iii) unpaid proper wages, including overtime, due to an impermissible time-shaving policy, (iv) unpaid wages for compensable break time, (v) unpaid wages, including overtime due to rounding, (vi) unlawfully retained gratuities due to an invalid tip pooling policy, (vii) statutory penalties for unlawfully claiming a tip credit in excess of the statutory amount permissible, (viii) statutory penalties for improperly claiming a tip credit for all hours worked despite having caused tipped employees to engage in non-tipped duties for hours exceeding 20% of the total hours worked each workweek, (ix) unpaid wages due to compensation on a fixed salary basis, (x) statutory penalties for failing to provide proper tip credit notice at hiring and annually thereafter, (xi) statutory penalties for failing to provide proper wage statements clearly indicating tip credit allowance for each payment period, (xii) statutory penalties for failing to provide wage and hour notices upon hiring and as legally required thereafter, (xiii) statutory penalties for failing to provide proper wage statements for each payment period, (xiv) liquidated damages, and (xv) attorney's fees and costs.

3.    Additionally, Plaintiffs allege, pursuant to NYLL §191, that they and others similarly situated are entitled to recover from Defendants: (1) liquidated damages; (2) interest; and (3) attorney's fees and costs, due to Defendants' untimely payments of wages to Plaintiffs and Class members.

4.    Plaintiff UVALDO TORRES also alleges, on behalf of himself, that he is entitled to recover from Defendants unreimbursed expenses, pursuant to the FLSA and the NYLL.

## JURISDICTION AND VENUE

5.    This Court has jurisdiction over this controversy, pursuant to 29 U.S.C. §216(b), 28 U.S.C. §§1331, 1337 and 1343 and has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §1367.

6.    Venue is proper in the Southern District pursuant to 28 U.S.C. §1391.

## PARTIES

7.    At all relevant times herein, Plaintiff, SANDY YUWONO, was and is a resident of Queens County, New York.

8.    At all relevant times herein, Plaintiff, UVALDO TORRES, was and is a resident of Queens County, New York.

9.    Defendants collectively own and operate JADE EATERY & LOUNGE LLC d/b/a JADE EATERY which is a restaurant and lounge (the "Restaurant"), located at 1 Station Square, Forest Hills, New York 11375.

10. Corporate Defendant, JADE EATERY & LOUNGE LLC ("JADE RESTAURANT"), is a domestic limited liability company organized under the laws of New York, with an address for service of process at c/o Sam Kandhorov, 70-38 Austin Street, Forest Hills, New York,

11375 and a principal place of business located at Jade Restaurant & Lounge, 1 Station Square, Forest Hills, New York 11375.

11. Corporate Defendant, KFG HOSPITALITY GROUP LLC, is a domestic limited liability company organized under the laws of New York, with an address for service of process at c/o Siegel & Reiner, LLP, 130 East 59th Street, New York, New York 10022 and a principal place of business located at 1 Station Square, Forest Hills, New York 11375.

12. Corporate Defendant KFG HOSPITALITY GROUP LLC operates under the assumed name JADE EATERY & LOUNGE.

13.     Individual Defendant ARUN KUMAR is a co-owner and executive officer of Corporate Defendants. ARUN KUMAR exercises operational control as it relates to all employees including Plaintiffs, FLSA Collective Plaintiffs, and the Class. ARUN KUMAR exercises the power to (and also delegates to managers and supervisors the power to) fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiffs, FLSA Collective Plaintiffs, and the Class. At all times, employees of the Restaurant could complain to ARUN KUMAR directly regarding any of the terms of their employment, and ARUN KUMAR would have the authority to effect any changes to the quality and terms of employees' employment, including changing their schedule, compensation, or terminating or hiring such employees. ARUN KUMAR exercised functional control over the business and financial operations of all Corporate Defendants. ARUN KUMAR had the power and authority to supervise and control supervisors of Plaintiffs, FLSA Collective Plaintiffs, and Class members, and could reprimand employees.

14. Individual Defendant RICHARD LIAO is a co-owner and executive officer of Corporate Defendants. RICHARD LIAO exercises operational control as it relates to all employees including Plaintiffs, FLSA Collective Plaintiffs, and the Class. RICHARD LIAO exercises the power to (and also delegates to managers and supervisors the power to) fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiffs, FLSA Collective Plaintiffs, and the Class. At all times, employees of the Restaurant could complain to RICHARD LIAO directly regarding any of the terms of their employment, and RICHARD LIAO would have the authority to effect any changes to the quality and terms of employees' employment, including changing their schedule, compensation, or terminating or hiring such employees. RICHARD LIAO exercised functional control over the business and financial operations of all Corporate Defendants. RICHARD LIAO had the power and authority to supervise and control supervisors of Plaintiffs, FLSA Collective Plaintiffs, and Class members, and could reprimand employees.

15. Individual Defendant SAM KANDHOROV is a predecessor in interest of Corporate Defendants. SAM KANDHOROV has exercised operational control as it relates to all employees including Plaintiffs, FLSA Collective Plaintiffs, and the Class. SAM KANDHOROV has exercised the power to (and also delegated to managers and supervisors the power to) fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiffs, FLSA Collective Plaintiffs, and the Class. At all times, employees of the Restaurant could complain to SAM KANDHOROV directly regarding any of the terms of their employment, and SAM KANDHOROV would have the authority to effect any changes to the quality and terms of

employees' employment, including changing their schedule, compensation, or terminating or hiring such employees. SAM KANDHOROV exercised functional control over the business and financial operations of all Corporate Defendants. SAM KANDHOROV has had the power and authority to supervise and control supervisors of Plaintiffs, FLSA Collective Plaintiffs, and Class members, and could reprimand employees.

16. At all relevant times, Corporate Defendants were and continue to be an "enterprise engaged in commerce" within the meaning of FLSA.

17. At all relevant times, the work performed by Plaintiffs, FLSA Collective Plaintiffs, and Class members was directly essential to the business operated by Defendants.

18. At all relevant times, Plaintiffs were Defendants' employees within the meaning of NYLL §§ 2 and 651. At all relevant times, Defendants were Plaintiffs' employers within the meaning of NYLL §§ 2 and 651.

19. At all relevant times, Defendants employed at least eleven (11) employees as defined under the NYLL.

20. Plaintiffs have fulfilled all conditions precedent to the institution of this action and/or such conditions have been waived.

## FLSA COLLECTION ACTION ALLEGATIONS

21. Plaintiffs bring claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C § 216(b), on behalf of all current and former non-exempt employees (including, but not limited to, greeters, waiters, servers, bartenders, food runners, bussers, delivery persons, hosts, and dishwashers, among others) employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (herein, "FLSA Collective Plaintiffs").

22. At all relevant times, Plaintiffs and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them their proper wages, including tips. The claims of Plaintiffs stated herein are essentially the same as those of the other FLSA Collective Plaintiffs for: (i) unpaid overtime due to Defendants' invalid tip credit allowance, (ii) unpaid wages, including overtime, due to an impermissible time-shaving policy, (iii) unlawful rounding, (iv) statutory penalties, (v) liquidated damages, and (vi) attorney's fees and costs. The claims of Plaintiffs stated herein are essentially the same as those of the other FLSA Collective Plaintiffs.

23. The claims for relief are properly brought under and maintained as an opt-in collective pursuant to §16(b) of FLSA, 29 U.S.C. 216(b). FLSA Collective Plaintiffs are readily ascertainable. The number and identity of the FLSA Collective Plaintiffs are able to be determined from the records of Defendants. The hours assigned and worked, the positions held, and rates of pay for each FLSA Collective Plaintiffs are also determined from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily ascertainable from Defendants. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS

24. Plaintiffs bring claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all current and former non-exempt employees (including, but not limited to, greeters, waiters, servers, bartenders, food runners, bussers, delivery persons, hosts and dishwashers, among others) employed by Defendants on or after the date that is six

7

years before the filing of the Complaint in this case as defined herein (the "Class Period").

25. All said persons, including Plaintiffs, are referred to herein as the "Class." The Class members are readily ascertainable. The number and identity of the Class members are able to be determined from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class member are also determined from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

26. The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, the facts on which the calculation of that number is based are presently within the sole control of Defendants, and there is no doubt that there are more than forty (40) members of the Class. The Class further includes a subclass of tipped employees ("Tipped Subclass") who also number more than forty (40). Plaintiffs are members of the Tipped Subclass.

27. Plaintiffs' claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief, that would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendants of (i) failing to pay statutory minimum wage and proper overtime due to Defendants' invalid tip credit allowance, (ii) failing to pay spread of hours premium for each workday that exceeded ten (10) or more hours, (iii) failing to pay proper wages, including overtime, due to an impermissible time-shaving policy, (iv) failing to pay proper wages due to rounding, (v) failing to pay proper wages for compensable break time, (vi) failing to provide wage and hour notices to Class Members upon hiring and as legally required thereafter, (vii)

failing to provide proper wage statements for each payment period, and (viii) failing to timely pay all wages due under NYLL §191 due to Defendants' untimely payments of wages to Plaintiffs and Class members.

28. Additionally, Defendants failed to pay the proper minimum wage as they were not entitled to claim any tip credit because they failed to meet statutory requirements under NYLL. Plaintiffs and Class Members similarly suffered from Defendants' failure to pay the proper minimum wage due to Defendants' invalid tip credit allowance, because Defendants: (i) failed to provide proper tip credit notice at hiring and annually thereafter, (ii) unlawfully claimed tip credit in excess of the statutory amount permissible, (iii) claimed tip credit for all hours worked despite having caused tipped employees to engage in non-tipped duties for hours exceeding 20% of the total hours worked each workweek, (iv) claimed tip credit for all continuous periods of time of non-tipped, directly supporting work exceeding 30 minutes (v) improperly calculated the proper tip credit overtime rate for tipped employees, (vi) implemented an invalid tip pooling scheme, (vii) illegally retained tips, (viii) failed to provide proper wage statements clearly indicating tip credit allowance for each payment period, and (ix) failed to keep track of daily tips earned and maintain records thereof.

29. Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiffs and other Class members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures.

30. Plaintiffs are able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiffs are represented by attorneys who are experienced

and competent in both class action litigation and employment litigation and have previously represented Plaintiffs in wage and hour cases.

31. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because the losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendant and resulting in the impairment of Class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

32. Defendants and other employers throughout the state violate New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

33. There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

    a.  Whether Defendants employed Plaintiffs and the Class within the meaning of New York Labor Law and applicable state laws;

    b.  What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not properly pay Plaintiffs and Class members;

    c.  At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay Plaintiffs and Class members for their work;

    d.  Whether Defendants properly compensated Plaintiffs and Class members for all hours worked;

    e.  Whether Defendants improperly calculated the hourly overtime rate for Plaintiffs and Class members for all hours worked over forty (40) in a week;

    f.  Whether Defendants improperly rounded down the hours worked of Plaintiffs and Class members;

g.   Whether Defendants timely paid Plaintiffs and Class Members on a weekly basis as required by NYLL;

h.   Whether Defendants operated their business with a policy of failing to pay Plaintiffs and Class members for all hours worked;

i.   Whether Defendants improperly paid employees on a fixed salary basis;

j.   Whether Defendants operated their business with a policy of failing to pay Plaintiffs and Class members "spread of hours" premiums, as required under NYLL;

k.   Whether Defendants operated their business with a policy of failing to pay Plaintiffs and Class members the tip credit overtime premium for all hours worked in excess of forty (40) each workweek;

l.   Whether Defendants operated their business with a policy of claiming a tip credit in excess of the statutory amount permissible;

m.   Whether Defendants operated their business with a policy of failing to provide compensation for all hours worked due to a policy of time-shaving;

n.   Whether Defendants operated their business with a policy of failing to provide clear and free breaks to Plaintiffs and Class Members, as required under the NYLL;

o.   Whether Defendants caused tipped employees to engage in non-tipped duties exceeding twenty percent (20%) or two (2) hours of their work shift;

p.   Whether Defendants claimed tip credit for any continuous periods of time of non-tipped, directly supporting work exceeding 30 minutes;

q.   Whether Defendants accurately tracked the amounts of tips earned each day

and maintained records thereof;

r.  Whether Defendants illegally retained gratuities of Plaintiffs and Class members;

s.  Whether Defendants provided proper wage and hour notices to Plaintiffs and the Class members, including, among others, the rate of compensation, overtime rate, trade name of employer, pursuant to the requirements of NYLL;

t.  Whether Defendants provided proper wage notice, at date of hiring and annually thereafter, to all non-exempt employees, per requirements of NYLL;

u.  Whether Defendants provided Plaintiffs and Class Members proper wage statements with each payment of wages, as required under NYLL;

v.  Whether Defendants provided proper wage statements informing: (i) tipped employees of the amount of tip credit allowance for each payment period; (ii) their proper overtime rate of compensation; and (iii) all non-exempt employees of information required to be provided on wage statements, as required under NYLL and applicable state laws;

w.  Whether Defendants properly provided notice to all tipped employees that Defendants were taking a tip credit; and

x.  Whether Defendants provided proper tip credit notice at hiring and annually thereafter.

## **STATEMENT OF FACTS**

**Plaintiff SANDY YUWONO**

34. In or about January 7, 2022, Plaintiff SANDY YUWONO ("Plaintiff YUWONO") was hired by Defendants to work as a server for Defendants' Jade Eatery and Lounge Restaurant located at 1 Station Square, Forest Hills, New York 11375. Plaintiff YUWONO was employed by Defendants until on or about March 14, 2022, when his employment with Defendants ended.

35. Throughout his employment with Defendants, Plaintiff YUWONO was regularly scheduled to work over forty (40) hours per week, but was not paid appropriate minimum wage compensation, and overtime premiums, for the hours that he worked. During his employment, Plaintiff YUWONO was scheduled to work six (6) days per week, Monday to Wednesdays from 11:15 a.m. to 12:00 a.m. and from Fridays to Sundays from 11:15 a.m. to 12:00 a.m., for a total of sixty-four and a half (64.5) hours per workweek. Similarly, FLSA Collective Plaintiffs and Class members had similar work schedules.

36. At all times of the employment of Plaintiff YUWONO with Defendants, Plaintiff YUWONO was compensated on a tip credit basis of ten dollars ($10) per hour regardless of the total number of hours he worked that week, plus tips for that week. The tipped credit minimum wage as of December 31, 2021 was $10.00 cash wage plus a $5.00 tip credit. However, Defendants compensated Plaintiff YUWONO below the statutory tipped credit minimum wage because Defendants claimed an invalid tip credit. Similarly, FLSA Collective Plaintiffs and Class members were compensated at an hourly tip credit rate by Defendants which included an hourly base rate for all shifts worked during the week plus tips.  At all times, Plaintiff YUWONO was compensated by check.

37. Plaintiff YUWONO was employed as a server and paid on a tip credit basis for all hours worked. However, he was required to engage in more than two (2) hours or twenty (20%) of his working time performing non-tipped related activities, including but not limited to,

accepting and unloading deliveries; stocking the refrigerator; unloading supplies; cleaning the counters, tables, basement, store windows, containers, dishes, utensils, and floor mats; mopping kitchen and restaurant floors; cleaning and stocking the restrooms; sweeping; organizing inventory; taking out the garbage; organizing tables and chairs; providing customer service; packing take-out orders; and working as a cashier, stockboy, dishwasher, and host (hereinafter the "non-tipped duties"). Defendants required Plaintiff YUWONO, FLSA Collective Plaintiffs and Class members to engage in non-tipped activities in excess of two (2) hours or twenty percent (20%) of the total hours worked each shift. Defendants improperly claimed tip credit for all hours worked by tipped employees.

38. Additionally, Defendants claimed tip credit for all continuous periods of time of Plaintiff YUWONO, FLSA Collective Plaintiffs', and Class members' non-tipped, directly supporting work exceeding 30 minutes. Defendants improperly claimed tip credit for all hours worked by tipped employees.

39. Furthermore, Defendants did not compensate Plaintiff YUWONO his corresponding overtime wages at the rate of time and 1.5 times his regular hourly rate for each hour worked in excess of forty (40) per workweek. To the contrary, Defendants improperly compensated Plaintiff YUWONO at a his regular tip credit hourly rate of $10.00 for all hours worked, including hours worked in excess forty (40) hours per workweek. For example, Defendants' payroll records show that on January 31, 2022, Defendants paid Plaintiff YUWONO $981.00, which included $430.00 for 43 regular hours worked by Plaintiff YUWONO during that pay period paid at $10 per hour. *See* **Exhibit A**, Plaintiff YUWONO's paycheck # 3307 dated January 31, 2022. At deposition Defendant ARUN KUMAR testified that the handwriting on this check was his own, confirming that Defendants knowingly improperly paid Plaintiff YUWONO

at a tip credit rate of $10.00 for overtime hours. *Id*. The correct tip credit hourly overtime rate for Plaintiff YUWONO based on Defendants' $5.00 tip credit should have been $17.50 per hour for hours worked in excess of forty (40) hours per week. Defendants' policy of paying a straight-time hourly rate resulted in Plaintiff YUWONO being underpaid.

40. Similarly, Tipped Subclass members were also subjected to Defendants' policy of paying a straight-time rate. The wage statement of Opt-In Plaintiff KEVIN STREAT shows that he was also subject to Defendants' unlawful policy of paying tipped employees' overtime hours at their regular tip credit hourly rate, rather than at the proper overtime premium. For example, during the pay period from 11/28/22 – 12/4/22, Opt-In Plaintiff KEVIN STREAT was improperly paid for 44 hours of work at $10 per hour, which is his tip credit rate. *See* **Exhibit B**. The correct tip credit hourly overtime rate for Opt-In Plaintiff KEVIN STREAT based on Defendants' $5.00 tip credit should have been $17.50 per hour for hours worked in excess of forty (40) hours per week.

41. Throughout his employment with Defendants, Defendants failed to timely provide all wages due to Plaintiff YUWONO and Class members on a weekly basis, pursuant to NYLL § 191(a)(i). Plaintiff YUWONO was not compensated at all for the hours worked during the pay period of January 17, 2022 to February 4, 2022. Additionally, on or about March 14, 2022, Defendants gave Plaintiff YUWONO check number 4021 in the amount of One Thousand Six Hundred Dollars ($1,600) for the pay period February 28, 2022 to March 6, 2022, which Plaintiff YUWONO could not cash as he was informed by his banking institution that the check was fake.

42. Plaintiff YUWONO and Class members are manual laborers as defined under NYLL and must receive their timely wages weekly. *See* NYLL § 191(a)(i).

**Plaintiff UVALDO TORRES**

43. Plaintiff UVALDO TORRES ("Plaintiff TORRES") was a delivery person for Defendants' Jade Eatery and Lounge Restaurant located at 1 Station Square, Forest Hills, New York 11375, from in or around June 2014 to July 2020.

44. Throughout his employment with Defendants, Plaintiff TORRES was regularly scheduled to work over forty (40) hours per week, but was not paid appropriate minimum wage compensation, and overtime premiums, for the hours that he worked.

45. At all times of his employment, Plaintiff TORRES was scheduled to work six (6) days per week, from 2:00 p.m. to 10:00 p.m., with Wednesdays off, for a total of forty-eight (48) hours per week. Similarly, FLSA Collective Plaintiffs and Class members had similar work schedules.

46. From the beginning of his employment until in or around May 2020, Plaintiff TORRES was compensated on a tip credit basis of ten dollars ($10) per hour, plus tips.

47. From in or around June 2020 until the end of his employment, Defendants did not pay Plaintiff TORRES an hourly rate, but instead compensated him $100 per day only in tips. On days when Plaintiff TORRES did not earn $100 in tips, Defendants made up the difference in order to bring Plaintiff TORRES up to $100 per day. Given that Plaintiff TORRES regularly worked at least 8 hours per day, this daily rate of $100 resulted in Defendants paying Plaintiff TORRES only $12.50 per hour, which was below the hourly statutory minimum wage rate of $15.00. Additionally, there was never any agreement between Plaintiff TORRES and Defendants that this fixed daily rate of $100 would cover all hours worked, including overtime hours. Defendants similarly failed to pay FLSA Collective Plaintiffs and Class member for all overtime hours worked due to unlawful compensation schemes.

48. Defendants improperly compensated Plaintiff TORRES below the statutory tipped credit minimum wage because Defendants claimed an invalid tip credit. Similarly, FLSA Collective Plaintiffs and Class members were also improperly compensated at an hourly tip credit rate by Defendants. At all times, Plaintiff TORRES was compensated by check.

49. Plaintiff TORRES was employed as a delivery person and paid on a tip credit basis for all hours worked. However, he was required to engage in more than two (2) hours or twenty (20%) of his working time performing non-tipped related activities, including but not limited to, washing dishes, packing delivery orders, refilling condiment containers at the restaurant, taking inventory, accepting and unloading deliveries, stocking the refrigerator; and cleaning the restaurant. Defendants required Plaintiff TORRES, FLSA Collective Plaintiffs and Class members to engage in non-tipped activities in excess of two (2) hours or twenty percent (20%) of the total hours worked each shift. Defendants improperly claimed tip credit for all hours worked by tipped employees.

50. Additionally, Defendants claimed tip credit for all continuous periods of time of Plaintiff TORRES', FLSA Collective Plaintiffs', and Class members' non-tipped, directly supporting work exceeding 30 minutes. Defendants improperly claimed tip credit for all hours worked by tipped employees. Defendants implemented no policies to track working hours engaged by tipped employees which were not related to tipped activities.

51. During his employment, Defendants failed to properly Plaintiff TORRES his corresponding overtime wages at the rate of time and 1.5 times his regular hourly rate for each hour worked in excess of forty (40) per workweek. To the contrary, Defendants improperly compensated Plaintiff TORRES at his hourly tip credit rate of $10.00 per hour for all overtime hours. The correct tip credit hourly overtime rate for Plaintiff TORRES based on Defendants'

$5.00 tip credit should have been $17.50 per hour. Defendants' policy of paying a straight-time hourly rate resulted in Plaintiff TORRES being underpaid. Similarly, Tipped Subclass members were also subjected to Defendants' policy of paying a straight-time rate. All Tipped Subclass members were subjected to Defendants' improper calculation of their overtime rates. *See* **Exhibit A**, wage statement of Plaintiff YUWONO, and **Exhibit B**, wage statement of Opt-In Plaintiff KEVIN STREAT.

52. Throughout his employment with Defendants, Defendants failed to timely provide all wages due to Plaintiff TORRES and Class members on a weekly basis, pursuant to NYLL § 191(a)(i). Instead, Defendants regularly Plaintiff TORRES for multiple weeks of work on a single paycheck, well after seven days of the end of the week in which the wages were earned. Class members were similarly not paid all wages due within seven days of the end of the week in which the wages were earned.

53. Plaintiff TORRES and Class members are manual laborers as defined under NYLL and must receive their timely wages weekly. *See* NYLL § 191(a)(i).

54. Additionally, during his employment as a delivery person, Plaintiff TORRES was required to use his own e-bike or his own personal car to make deliveries. However, Defendants never reimbursed Plaintiff TORRES for vehicle expenses like gas, maintenance, insurance and repairs, which he paid for out of his own pocket. As a result, Plaintiff TORRES was forced to incur significant out of pocket cots, which should have been reimbursed by Defendants since these expenses were related to the use of his personal vehicle for restaurant deliveries.

55. Throughout their employment, Defendants regularly provided Plaintiffs with "meals" which they were required to consume while working. Such meals were leftovers from the

Restaurant and were unsanitary and unpalatable. Similarly, FLSA Collective Plaintiffs and Class members were provided the same unsanitary and unpalatable "meals."

56. Throughout Plaintiffs' employment with Defendants, Plaintiffs were never given a free and clear "break" as they were required by Defendants to continue working during their breaks. Similarly, FLSA Collective Plaintiffs and Class members were required by Defendants to work through their breaks and were thus subjected to the same unlawful practice.

57. Throughout Plaintiffs' employment with Defendants, Defendants also engaged in time-shaving employees' hours by requiring Plaintiffs to work until midnight, but Defendants would only compensate Plaintiffs until 10:00 p.m., and not for actual hours worked, resulting in unpaid wages and overtime premiums. Likewise, FLSA Collective Plaintiffs and Class members were subjected to Defendants' routine practice of shaving time off from the hours that their employees worked, and not compensating them for their actual hours worked, resulting in unpaid wages and overtime premiums.

58. Moreover, at all times of Plaintiffs' employment, the hostess on duty was responsible for keeping track of the arrival and departure times of Plaintiffs and all of Defendants' employees. Specifically, the hostess on duty would write down when employees arrived at work and the hostess on duty would also write down when employees ended their shifts for the day. However, the hostess always rounded down employees' hours worked to the nearest half hour or when an employee's scheduled shift was supposed to end. For example, even when Plaintiffs finished working at 12 a.m., the hostess on duty would write 11:30 p.m., since 11:30 p.m. was the time at which the shift was supposed to end. FLSA Collective Plaintiffs and Class members were also subjected to Defendants' impermissible rounding down of their hours worked, and as a result were not paid significant wages, including overtime wages.

59. Additionally, although Defendants compensated Plaintiffs, FLSA Collective Plaintiffs and Class members at the tipped credit minimum wage rate, Defendants were not entitled to claim any tip credit allowance under NYLL because Defendants: (i) failed to properly provide tip credit notice at hiring and annually thereafter; (ii) claimed tip credit for all hours worked despite having caused tipped employees to engage in non-tipped duties in excess of two hours or twenty (20%) of the total hours worked each shift; (iii) claimed a tip credit for all continuous periods of time of non-tipped, directly supporting work exceeding 30 minutes; (iv) failed to provide proper wage statements clearly indicating tip credit allowance for each payment period; and (v) failed to accurately keep track of daily tips earned and maintain records thereof.

60. Plaintiffs received part of their compensation in tips, but there was no tip sheet to verify that they received the correct amount of tips. The distribution of the tips was under the complete control of Defendants.

61. Throughout the duration of Plaintiffs' employment, on a regular basis, Defendants who were the Restaurant owners and Plaintiffs' supervisors would withhold cash and credit card tips. Plaintiff YUWONO was made aware of this out of suspicion that Defendants were illegally retaining a portion of the tips earned by tipped employees. Plaintiff YUWONO therefore would ask co-workers how much they made in credit card tips, and compare the total amount of tips distributed to the tips left by patrons, yet even on busy days with approximately 100 to 150 patrons a day, Plaintiff YUWONO received approximately $100 in tips. On a few occasions, Defendants claimed patrons asked to be reimbursed for their paid gratuities and would deduct them from Plaintiff's compensation. Moreover, if a patron left the Restaurant without paying, the cost of the meal would be deducted from compensation of tipped employees. Similarly, FLSA

Collective Plaintiffs and Class members were deducted the costs for meals when patrons left without paying.

62. At all times, Plaintiffs regularly worked shifts exceeding ten (10) hours in duration. However, Plaintiffs never received any "spread of hours" premium for working such shifts, as required under NYLL. Similarly, Class members regularly worked shifts exceeding ten (10) hours in duration and were never paid "spread of hours" premium.

63. Defendants knowingly and willfully operated their business with a policy of not paying for all hours worked to Plaintiffs, FLSA Collective Plaintiffs and Class members in violation of FLSA and NYLL.

64. Defendants knowingly and willfully operated their business with a policy of not properly compensating either FLSA or New York State overtime rate of time and one-half the hourly rate to Plaintiffs, FLSA Collective Plaintiffs, and Class members.

65. At no time during the relevant periods did Defendants provide Plaintiffs, FLSA Collective Plaintiffs or Class members with proper wage and hour notices, at the beginning of employment and annually thereafter, as required by NYLL.

66. At no time during the relevant periods did Defendants provide Plaintiffs with proper wage statements as required by NYLL. Similarly, Class members also did not receive proper wage statements, in violation of NYLL.

67. At no time during the relevant periods did Defendants provide Plaintiffs or Tipped Class members with proper tip notices, as required by NYLL.

68. In failing to provide proper wage statements and notices, Defendants have failed to comply with the law in a manner that clearly entails a concrete risk of harm to an interest identified by the New York State legislature. Defendants' failure to provide such notices

trivializes the importance of these notices in protecting Plaintiffs' interests in ensuring proper pay. Despite Defendants' conduct, there is a reason why the New York legislature concluded that enacting wage notice provisions would "far better protect workers' rights and interests" than existing penalties. *See* N.Y. Spons. Mem., 2010 S.B. 8380. Written notices function as a means of apprising employees of their rights and of their employer's obligations towards them, empowering employees to advocate for themselves. Deprivation of such notices necessarily entails a significant risk of harm to the employees' concrete interest in being paid properly and timely.

69. Due to Defendants' failure to properly provide legally mandated notices such as earning statements and wage notices with accurate information, Defendants were able to hide their wrongdoing from employees, and continue to attempt to hide their wrongdoing necessitating the current litigation. The failure to provide NYLL notices continues to result in delayed payment of all proper wages owed to Plaintiffs and Class members. The failure to: (i) properly inform Plaintiffs and Class members of their pay rates, (ii) account for all hours worked by Plaintiffs on their wage statements, and (iii) compensate Plaintiffs and Class members at the proper rates for all regular and overtime hours worked caused Plaintiffs to struggle to timely pay their bills. Class members similarly have struggled to timely pay debts due to Defendants' continued attempts to hide wrongdoing from employees.

70. In this case, Plaintiffs, FLSA Collective Plaintiffs, and Class members, suffer concrete, downstream consequences from the Defendants' recordkeeping violations. Due to Defendants' failure to include all hours worked and the proper overtime rate in the wage notice and statements, Plaintiffs were underpaid for the duration of their employment when they should have been paid proper overtime premiums at a rate of 1.5 times their regular hourly rate for the

hours they worked over forty (40) hours. Because Plaintiffs were not apprised of their proper rates and hours, they had no chance to determine whether they were underpaid or not. This ultimately led to Plaintiffs' struggle to pay bills and debts and make other necessary purchases. Similarly, FLSA Collective Plaintiffs and Class members suffered similar monetary injury from Defendants' recordkeeping violations.

71. In addition, Defendants failed to maintain accurate recordkeeping of the hours Plaintiffs worked and failed to pay Plaintiffs appropriately for all hours worked, including hours worked over forty (40) in a workweek, for which Plaintiffs were due an additional overtime premium.

72. Due to these unlawful acts of Defendants, Plaintiffs suffered liquidated damages in an amount not presently ascertainable. In addition, Plaintiffs are entitled to reasonable attorney's fees, statutory penalties and costs and disbursements of the action, pursuant to NYLL.

73. Plaintiffs retained Lee Litigation Group, PLLC to represent Plaintiffs, FLSA Collective Plaintiffs, and Class members, in this litigation and have agreed to pay the firm a reasonable fee for its services.

**STATEMENT OF CLAIM**
**COUNT I**
**VIOLATION OF THE FAIR LABOR STANDARDS ACT**

74. Plaintiffs reallege the foregoing paragraphs of this Second Amended Class and Collective Action Complaint as fully set forth herein.

75. At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiffs and FLSA Collective Plaintiffs are covered individuals within the meaning of FLSA, 29 U.S.C. §§ 206(a) and 207(a).

76. At all relevant times, Defendants employed Plaintiffs and FLSA Collective Plaintiffs within the meaning of FLSA.

77. At all relevant times, Corporate Defendants had gross annual revenues in excess of $500,000.

78. At all relevant times, Defendants willfully violated Plaintiffs and FLSA Collective Plaintiffs rights by failing to pay wages in the lawful amount for all hours worked, including those in excess of forty (40) hours worked each week, due to time-shaving.

79. At all relevant times, Defendants willfully violated Plaintiffs and FLSA Collective Plaintiffs rights by failing to pay wages in the lawful amount for all hours worked, including those in excess of forty (40) hours worked each week, due to rounding down.

80. At all relevant times, Defendants had a policy and practice that failed to pay overtime compensation at the statutory rate of time and one-half to Plaintiffs and FLSA Collective Plaintiffs for all hours worked in excess of forty (40) hours per workweek.

81. At all relevant times, Defendants engaged in a policy and practice of failing to properly reimburse Plaintiff TORRES for vehicle expenses in violation of the FLSA.

82. Records, if any, concerning the number of hours worked by Plaintiffs and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs should be in the possession and custody of Defendants. Plaintiffs intend to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

83. Defendants knew of and/or showed a willful disregard for the provisions of FLSA as evidenced by their failure to compensate Plaintiffs and FLSA Collective Plaintiffs their proper wages, including their proper overtime premium, when Defendants knew or should have known

such was due.

84. Defendants failed to properly disclose or apprise Plaintiffs and FLSA Collective Plaintiffs of their rights under FLSA.

85. As a direct and proximate result of Defendants' willful disregard of FLSA, Plaintiffs and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to FLSA.

86. Due to the intentional, willful and unlawful acts of Defendants, Plaintiffs and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid wages and unpaid overtime, plus an equal amount as liquidated damages.

87. Plaintiffs and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorney's fees and costs pursuant to 29 U.S.C. § 216(b).

## COUNT II
## VIOLATION OF THE NEW YORK LABOR LAW

88. Plaintiffs reallege the foregoing paragraphs of this Second Amended Class and Collective Action Complaint as if fully set forth herein.

89. At all relevant times, Plaintiffs and Class members were employed by Defendants within the meaning of NYLL, §§ 2 and 651.

90. At all relevant times, Defendants knowingly and willfully operated their business with a policy and practice of not paying Plaintiffs and Class members the prevailing New York City minimum wage rate and proper overtime due to Defendants' invalid tip credit allowance.

91. At all relevant times, Defendants knowingly and willfully operated their business with a policy and practice of not paying "spread of hours" premium for each workday that exceeded ten (10) or more hours.

92. At all relevant times, Defendants knowingly and willfully operated their business

with a policy and practice of refusing to pay Plaintiffs and Class members for all hours worked, including hours worked in excess of forty (40) in a workweek, due to Defendants' impermissible policy of time-shaving.

93. At all relevant times, Defendants knowingly and willfully operated their business with a policy and practice of refusing to pay Plaintiffs and Class members for all hours worked, including hours worked in excess of forty (40) in a workweek, due to Defendants' impermissible rounding down.

94. At all relevant times, Defendants knowingly and willfully operated their business with a policy of not providing a free and clear break, in direct violation of NYLL.

95. At all relevant times, Defendants knowingly and willfully operated their business with a policy of illegally retaining tips due to an invalid tip pooling policy.

96. At all relevant times, Defendants knowingly and willfully operated their business with a policy of failing to keep track of daily tips earned and maintain records thereof, in direct violation of NYLL.

97. At all relevant times, Defendants knowingly and willfully operated their business with a policy of not paying the proper tip credit overtime rate thereof for all hours worked to Plaintiffs and Class members, in direct violation of NYLL.

98. At all relevant times, Defendants knowingly and willfully violated the rights of Plaintiffs and Class members by failing to pay them overtime compensation at the rate of not less than one and one-half times the regular rate of pay for each hour worked in excess of forty (40) hours in a workweek.

99. At all relevant times, Defendants knowingly and willfully operated their business with a policy of not properly notifying employees of their overtime rate, in direct violation of

NYLL.

100.    At all relevant times, Defendants knowingly and willfully operated their business with a policy of not providing Plaintiffs and Class members proper wage and hour notice, at date of hiring and annually thereafter, in direct violation of NYLL.

101.    At all relevant times, Defendants knowingly and willfully operated their business with a policy of not providing Plaintiffs and Class members proper tip credit notice, at date of hiring and annually thereafter, in direct violation of NYLL.

102.    Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements clearly indicating tip credit allowance for each payment issued to Plaintiffs and Class Members, as required by NYLL § 195(3)

103.    Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements with every payment issued to Plaintiffs and Class Members, as required by NYLL § 195(3).

104.    At all relevant times, Defendants engaged in a policy and practice of failing to properly reimburse Plaintiff TORRES for vehicle expenses in violation of the NYLL.

105.     Due to Defendants' NYLL violations, Plaintiffs and Class members are entitled to recover from Defendants unpaid minimum wage, unpaid overtime, unpaid spread of hours premium, unpaid compensable break time, illegally retained tips, damages for unreasonably delayed payments, reasonable attorney's fees, liquidated damages, statutory penalties, and costs and disbursements of the action, pursuant to NYLL.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs on behalf of themselves, FLSA Collective Plaintiffs and Class members, respectfully requests that this Court grant the following relief:

a. A declaratory judgment that the practices complained of herein are unlawful under FLSA and NYLL;

b. An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c. An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay proper wages for all hours worked, including overtime compensation for all hours worked over forty (40) per workweek, pursuant to 29 U.S.C. § 216;

d. An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay minimum wages and overtime wages for all hours worked, due to time shaving, pursuant to the FLSA and the NYLL;

e. An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay minimum wages and overtime wages for all hours worked, due to rounding, pursuant to the FLSA and the NYLL;

f. An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay proper wages and overtime wages, due to an improper fixed salary compensation scheme;

g. An award of unpaid wages, including overtime compensation, due to Defendants' failure to pay spread of hours premiums under the NYLL;

h. An award of illegal retained gratuities under the FLSA and the NYLL;

i. An award of statutory penalties as a result of Defendants' failure to comply with wage notice and wage statement requirements under the NYLL;

j.   An award of liquidated damages, interest, and legal fees as a result of Defendants' willful failure to pay Plaintiffs and Class members timely on a weekly basis as required under the NYLL;

k.   An award of statutory penalties, prejudgment and post judgment interest, costs and expenses of this action together with reasonable attorney's and expert fees and statutory penalties;

l.   Designation of Plaintiffs as Representatives of the FLSA Collective Plaintiffs;

m.   Designation of this action as a class action pursuant to F.R.C.P. 23;

n.   Designation of Plaintiffs as Representatives of the Class;

o.   Payment of a reasonable service award to Plaintiffs, in recognition of the services he has rendered and will continue to render to Class members, and the risks he has taken and will take; and

p.   Such other and further legal and equitable relief as this Court deems just and proper.

## **JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury on all issues so triable as of right by jury.


Date: October 9, 2023
     New York, New York         By:   Respectfully submitted,
                                      /s/ *C.K. Lee*
                                      C.K. Lee, Esq.
                                      **LEE LITIGATION GROUP, PLLC**
                                      C.K. Lee (CL 4086)
                                      Anne Seelig (AS 3976)
                                      148 W. 24th Street, 8th Floor
                                      New York, NY 10011
                                      Tel.: 212-465-1180
                                      Fax: 212-465-1181
                                      *Attorneys for Plaintiffs,*
                                      *FLSA Collective Plaintiffs*
                                      *and the Class*