UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SANDY YUWONO and UVALDO
TORRES, *on behalf of themselves, and the
class of FLSA Collective Plaintiffs*,

               Plaintiffs,

     - v -

JADE EATERY & LOUNGE LLC, KFG
HOSPITALITY GROUP LLC, ARUN
KUMAR, RICHARD LIAO, and SAM
KANDHOROV,

               Defendants.

---

**<u>ORDER</u>**

22 Civ. 4227 (PGG) (RWL)

---

PAUL G. GARDEPHE, U.S.D.J.:

       In this action, Plaintiffs Sandy Yuwono and Uvaldo Torres contend that their

former employer, KFG Hospitality Group LLC, d/b/a Jade Eatery & Lounge LLC, and

defendants Arun Jumar, Richard Liao, and Sam Khandhorov (collectively, "Defendants")

violated the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL").

Plaintiffs bring their claims as a collective action pursuant to Section 16(b) of the FLSA, 29

U.S.C § 216(b), and a class action pursuant to Federal Rule of Civil Procedure 23, on behalf of

all current and former non-exempt employees of Defendants with similar FLSA and NYLL

claims.  (Second Amended Complaint ("SAC") (Dkt. No. 66) ¶¶ 21-33)[1]

       Defendants have moved to dismiss Plaintiffs' Wage Theft Prevention Act

("WTPA") claims, pursuant to Fed. R. Civ. P. 12(b)(1), alleging a lack of Article III standing.

(Dkt. Nos. 71, 73)

---

[1]  The Class Period covers the six years preceding the filing of the complaint.  (<u>Id.</u> ¶ 21)

For the reasons stated below, Defendant's motion to dismiss Plaintiffs' WTPA claims in the Second Amended Complaint for lack of Article III standing will be denied.

## BACKGROUND[2]

### I.    PARTIES

Defendants own and operate Jade Eatery & Lounge LLC, a restaurant and lounge located in Forest Hills, New York.  (SAC (Dkt. No. 66) ¶ 9)  Defendant Jade Eatery & Lounge LLC, is a domestic limited liability company organized under the laws of New York.  (Id. ¶ 10)  Defendant KFG Hospitality Group LLC, a domestic limited liability corporation organized under the laws of New York, operates under the name of Jade Eatery & Lounge.  (Id. ¶¶ 11-12)  Defendants Arun Kumar and Richard Liao are co-owners and executive officers of the corporate defendants, and "exercise[] operational control as it relates to all employees, including Plaintiffs, FLSA Collective Plaintiffs, and the class."  (Id. ¶¶ 13-14)  Defendant Sam Kandhorov is a predecessor in interest of the corporate defendants.  (Id. ¶ 15)

Plaintiff Sandy Yuwono was hired by Defendants to work as a server at the Jade Eatery & Lounge on January 7, 2022.  (Id. ¶ 34)  Yuwono was employed at the restaurant until March 14, 2022.  (Id.)

Plaintiff Uvaldo Torres was hired as a delivery person for the Jade Eatery & Lounge in June 2014.  (Id. ¶ 43)  He was employed at the restaurant until July 2020.  (Id.)

### II.    PLAINTIFFS' ALLEGATIONS

Plaintiffs allege, on behalf of themselves and class members, that Defendants did not pay them the required minimum wage and overtime compensation, and improperly claimed

---

[2]  Unless otherwise noted, the Court's factual statement is drawn from the SAC.  A plaintiff's well pled facts are presumed true for purposes of resolving a motion to dismiss.  See Kassner v. 2nd Ave. Delicatessen, Inc., 496 F.3d 229, 237 (2d Cir. 2007).

tip credit, under the FLSA and NYLL.  The SAC also alleges wage notice and wage statement violations under the WTPA.

Plaintiff Yuwono alleges that he worked six days per week, Monday to Wednesday from 11:15 a.m. to 12:00 a.m., and Friday to Sunday from 11:15 a.m. to 12:00 a.m., for a total of 64.5 hours per workweek.  He alleges that Defendants did not pay him the appropriate minimum wage and the appropriate overtime rate for hours worked in excess of 40 per week.  (Id. ¶ 35)

Yuwono further alleges that Defendants improperly claimed tip credit for all hours he worked, regardless of the type of work he performed.  According to Yuwono, his "non-tipped [work] activities"[3] amounted to more than twenty percent of the total hours he worked per shift.  (Id. ¶ 37)  With respect to hours that Yuwono worked in excess of forty per week, Defendants compensated Yuwono at his regular tip credit rate of $10.00 per hour rather than his overtime rate of $17.50 per hour.  (Id. ¶ 39)

Yuwono also alleges that – throughout his employment with the Defendants – Defendants failed to timely provide all wages due to Plaintiff Yuwono, and Class Members, on a weekly basis, pursuant to NYLL § 191(a)(i).  (Id. ¶ 41)

---

[3]  According to the SAC, Yuwono was required to engage in more than two hours of "non-tipped duties" each shift, including

accepting and unloading deliveries; stocking the refrigerator; unloading supplies; cleaning the counters, tables, basement, store windows, containers, dishes, utensils, and floor mats; mopping kitchen and restaurant floors; cleaning and stocking the restrooms; sweeping; organizing inventory; taking out the garbage; organizing tables and chairs; providing customer service; packing take-out orders; and working as a cashier, stockboy, dishwasher, and host[.]

(Id. ¶ 37)

Plaintiff Torres alleges that, throughout his employment, he worked six days per week, with Wednesdays off, from 2:00 p.m. to 10:00 p.m., for a total of 48 hours per week. (Id. ¶ 45) According to the SAC, Torres was not paid the appropriate minimum wage and was not paid at the appropriate overtime rate for hours worked in excess of 40. (Id. ¶¶ 44-47) Instead, Defendants paid Torres $100 per day, regardless of the number of hours he worked, including overtime hours. (Id. ¶ 47) Torres also alleges that Defendants improperly claimed tip credit for all hours he worked. (Id. ¶¶ 48-50) Finally, Torres alleges that "Defendants failed to timely provide all wages due to Plaintiff Torres and Class members on a weekly basis, pursuant to NYLL § 191(a)(i)." "Defendants [instead] regularly [paid] Plaintiff Torres for multiple weeks of work on a single paycheck, well after seven days of the end of the week in which the wages were earned." (Id. ¶ 52)[4]

The SAC further alleges that Defendants engaged in "time shaving" – "shaving time off from the hours that their employees worked, and not compensating them for their actual hours worked." (Id. ¶ 57) For example, Defendants required Plaintiffs to work until midnight, but only paid them for work performed up to 10:00 p.m. Defendants also "rounded down employees' hours worked to the nearest half hour or when an employee's scheduled shift was supposed to end," even if the employee worked past the end of their shift. (Id. ¶¶ 57-58)

In addition to alleging FLSA and NYLL minimum wage and overtime violations, the SAC asserts violations of the WTPA. In this regard, Plaintiffs contend that Defendants "knowingly and willfully operated their business with a policy of not providing Plaintiffs and Class members proper wage and hour notice, at date of hiring," and "not providing proper wage

---

[4] The SAC also contends that Defendants (1) did not provide statutorily-required breaks; (2) withheld cash and credit card tips; and (3) did not provide required spread-of-hours pay. (Id. ¶¶ 55-56, 61-62)

statements with every payment issued to Plaintiffs and Class Members."  (Id. ¶¶ 100, 103)
According to the SAC, Defendants' failure to provide proper wage notices and wage statements
resulted in several "concrete, downstream consequences."  (Id. ¶ 70)

As to the "concrete" consequences of Defendants' failure to provide wage notices
and wage statements, Plaintiffs contend that – had their wage notices stated the applicable
overtime rate, and had their wage statements included all hours worked – they would have had a
"chance to determine whether they were underpaid or not" and could have advocated for
themselves.  (Id.)  But "[b]ecause Plaintiffs were not apprised of their proper rates and hours,
they had no chance to determine whether they were underpaid or not."  (Id.)  Plaintiffs further
allege that "Defendants' failure to properly provide legally mandated notices such as earning
statements and wage notices with accurate information . . . [resulted and] continues to result in
delayed payment of all proper wages owed to Plaintiffs and Class members."  (Id. ¶ 69)  As a
result of the underpayment of wages earned, "Plaintiffs[] struggle[d] to [timely] pay bills and
debts and make other necessary purchases."  (Id. ¶ 70)

## III.    PROCEDURAL HISTORY

Plaintiff Yuwono filed the Complaint (Dkt. No. 1) on May 23, 2022, asserting
claims under the FLSA and NYLL.  On June 15, 2023, Yuwono and additional named plaintiff
Torres filed the First Amended Complaint (Dkt. No. 49), which asserts the same FLSA and
NYLL claims alleged in the Complaint, including WTPA claims.

In a September 21, 2023 letter, Defendants sought permission to move to dismiss
Plaintiffs' WTPA claims for lack of Article III standing.  (Dkt. No. 61)  In response, Plaintiffs
stated that they intended to file a second amended complaint.  (Dkt. No. 63).  Plaintiffs filed the
SAC on October 9, 2023.  (Dkt. No. 66)

Defendants moved to dismiss the SAC's WTPA claims on November 16, 2023. (Dkt. No. 73)  Plaintiffs filed their opposition to the motion to dismiss on November 30, 2023 (Dkt. No. 75), and Defendants filed a reply on December 6, 2023.  (Dkt. No. 74).

## DISCUSSION

### I.    LEGAL STANDARDS

#### A.    Rule 12(b)(1)

"[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit ([i.e.,] subject-matter jurisdiction)[.]"  Sinochem Int'l Co. v. Malay Int'l Shipping Corp., 549 U.S. 422, 430-31 (2007). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).  Where subject matter jurisdiction is challenged, a plaintiff "bear[s] the burden of 'showing by a preponderance of the evidence that subject matter jurisdiction exists.'"  APWU v. Potter, 343 F.3d 619, 623 (2d Cir. 2003) (quoting Lunney v. United States, 319 F.3d 550, 554 (2d Cir. 2003)).  In reviewing a motion to dismiss under Rule 12(b)(1), courts must "accept as true all material factual allegations in the complaint," and refrain from "drawing from the pleadings inferences favorable to the party asserting jurisdiction."  Whyte v. Bayview Loan Servicing, LLC, No. 21CV3301PKCLB, 2022 WL 4484664, at *3 (E.D.N.Y. Sept. 27, 2022) (cleaned up).

"In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1)[,] a district court may consider evidence outside the pleadings," Morrison v. Nat'l Austl. Bank. Ltd., 547 F.3d 167, 170 (2d Cir. 2008) (citing Makarova, 201 F.3d at 113), aff'd, 561 U.S. 247 (2010).

The Second Circuit has explained that "a Rule 12(b)(1) motion challenging subject matter jurisdiction may be either facial or fact-based." Carter v. HealthPort Techs., LLC, 822 F.3d 47, 56 (2d Cir. 2016). Where "a defendant raises a facial challenge to standing based solely on the complaint and the documents attached to it, 'the plaintiff has no evidentiary burden,' and a court must determine whether the plaintiff asserting standing 'alleges facts that affirmatively and plausibly suggest that the plaintiff has standing to sue.'" Marvin v. Allen, No. 23-cv-5947, 2024 WL 4290722, at *3 (S.D.N.Y. Sept. 24, 2024) (quoting Carter, 822 F.3d at 56); see generally Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004) ("A complaint is deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are integral to the complaint.") (internal citations and quotation marks omitted).

"[W]here a Rule 12(b)(1) motion is fact-based and a defendant proffers evidence outside the pleadings, a plaintiff must either come forward with controverting evidence or rest on the pleadings if the evidence offered by the defendant is immaterial." Marvin, 2024 WL 4290722, at *3 (citing Katz v. Donna Karan Co., LLC, 872 F.3d 114, 119 (2d Cir. 2017)). "If the extrinsic evidence presented by the defendant is material and controverted, [a court] must make findings of fact in aid of its decision as to standing." Id. (citing Carter, 822 F.3d at 57).

**B.      Standing**

"'The doctrine of standing asks whether a litigant is entitled to have a federal court resolve his grievance. This inquiry involves both constitutional limitations on federal-court jurisdiction and prudential limits on its exercise.'" United States v. Suarez, 791 F.3d 363, 366 (2d Cir. 2015) (quoting Kowalski v. Tesmer, 543 U.S. 125, 128 (2004) (internal quotation marks omitted)). At the motion to dismiss stage, plaintiff "bears the burden of alleging facts that

7

affirmatively and plausibly suggest" that plaintiff has standing.  Calcano v. Swarovski N. Am.
Ltd., 36 F.4th 68, 75 (2d Cir. 2022) (citation omitted).

   Article III of the United States Constitution confines the judicial power of the
federal courts to cases in which plaintiff shows that plaintiff suffered a concrete injury-in-fact.
TransUnion LLC v. Ramirez, 594 U.S. 413, 423 (2021) (citing Lujan v. Defs. of Wildlife, 504
U.S. 555, 560-61 (1992)).  The Second Circuit has described the injury-in-fact requirement as "a
low threshold."  John v. Whole Food Markets Grp., Inc., 858 F.3d 732, 736 (2d Cir. 2017).  To
establish Article III standing, a plaintiff seeking damages "must show (i) that he suffered an
injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was
likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial
relief."  TransUnion, 594 U.S. at 423 (citing Lujan, 504 U.S. at 560-61).  "These elements form
an 'irreducible constitutional minimum' without which a federal court may not proceed to the
merits of a claim."  Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.à.r.l., 790 F.3d 411,
417 (2d Cir. 2015) (quoting Lujan, 504 U.S. at 560).

   Moreover, the Supreme Court has "rejected the proposition that 'a plaintiff
automatically satisfies the injury-in-fact requirement whenever a statute grants a person a
statutory right and purports to authorize that person to sue to vindicate that right.'"  TransUnion,
594 U.S. at 426 (quoting Spokeo, Inc. v. Robins, 578 U.S. 330, 341 (2016)).  "Only those
plaintiffs who have been concretely harmed by a defendant's statutory violation may sue that
private defendant over that violation in federal court."  Id. at 427 (emphasis in original).
Therefore, even where a statute entitles a person to certain information, a deprivation of
information, without more, is not enough to establish standing.  Id.  Plaintiff must instead allege
a "concrete" harm that constitutes or bears a "'close relationship' to a harm traditionally

recognized as providing a basis for a lawsuit in American courts – such as physical harm, monetary harm, or various intangible harms[.]" Id. at 417 (citing Spokeo, 578 U.S. at 340-41).

        In connection with claims brought under the NYLL's Wage Theft Prevention Act, courts in this Circuit have held that "plaintiffs lack standing to bring wage notice and statement claims under the NYLL absent any concrete, downstream consequences of the recordkeeping violation." Chen v. Lilis 200 W. 57th Corp., No. 19-CV-7654 (VEC), 2023 WL 2388728, at *8 (S.D.N.Y. Mar. 7, 2023). "Vague allegations that Defendants' violations facilitated their other unlawful conduct do not give rise to a cognizable downstream consequence." Id. On the other hand, allegations that go "beyond asserting a bare statutory violation and sufficiently allege a concrete harm" resulting from "the underpayment of wages" pass muster, because "monetary injury is a concrete harm sufficient for purposes of Article III standing." Mateer v. Peloton Interactive, Inc., No. 22-CV-740 (LGS), 2022 WL 2751871, at *2 (S.D.N.Y. July 14, 2022); see also Metcalf v. TransPerfect Translations Int'l, Inc., No. 19-CV-10104 (ER) (KHP), 2023 WL 2674743, at *5, *7 (S.D.N.Y. Mar. 29, 2023) (standing adequately pled where "plaintiffs . . . allege that the inaccurate wage statements provided by [their employer] resulted in them being underpaid for nearly nine months").

        "In a proposed class action, 'the named class plaintiffs must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" Wyckoff v. Off. of the Comm'r of Baseball, 211 F. Supp. 3d 615, 627-28 (S.D.N.Y. 2016) (quoting McCall v. Chesapeake Energy Corp., 817 F. Supp. 2d 307, 313 (S.D.N.Y. 2011)), aff'd sub nom. Wyckoff v. Off. of Comm'r of Baseball, 705 F. App'x 26 (2d Cir. 2017); see also Lopez v. Tri-State Drywall, Inc., 861 F. Supp. 2d 533, 536 (E.D. Pa. 2012) (finding that FLSA collective

action representative "fails to state a cognizable claim under the FLSA . . . [and] [a]ccordingly, he cannot bring a collective action on behalf of his co-workers . . . even assuming those co-workers state cognizable claims under the Act[.]").

## II.    ANALYSIS

In moving to dismiss, Defendants contend that Plaintiffs' allegations of a "concrete, downstream harm" traceable to Defendants' WTPA violations contradict other allegations in the SAC and, in any event, are too speculative to demonstrate standing. (Def. Br. (Dkt. No. 73) at 6-8)

### A.    Whether the SAC Plausibly Alleges a WTPA Violation

As an initial matter, Defendants contend that this Court should not accept as true Plaintiffs' allegations regarding the deficiencies in Defendants' wage statements, because Plaintiffs' allegations are "illogical and directly contradict other allegations set forth in the SAC." (Def. Br. (Dkt. No. 73) at 6)  In this regard, Defendants assert that Plaintiffs' claim that their wage statements do not set forth the hours they worked and their rates of pay is contradicted by the SAC's allegation that "Defendants' payroll records [– as reflected in the sample paycheck attached as Exhibit A to the SAC –] show that on January 31, 2022, Defendants paid Plaintiff Yuwono $981.00, which included $430.00 for 43 . . . hours worked by Plaintiff Yuwono during that pay period paid at $10 per hour."  (Id.; see SAC (Dkt. No. 66) ¶ 39)

Defendants argue that Plaintiffs

cannot have it both ways.  They cannot assert, on the one hand, that wage and hour violations are evident on the face of the very documents which were provided to Plaintiffs with each payment of wages, while simultaneously alleging in the same pleading that those same documents somehow enabled Defendants to "hide their wrongdoing" from Plaintiffs.

(Def. Br. (Dkt. No. 73) at 7 (citing <u>Fedele v. Marist. Coll.</u>, No. 20-cv-3559, 2021 WL 3540432,

at *3 (S.D.N.Y. Aug. 10, 2021))

        Defendants' argument is not persuasive.  As an initial matter, the paycheck

attached as Exhibit A to the SAC does not comply with the WTPA, despite listing the total

amount paid and total hours worked, as well as a tip amount for the pay period.  The WTPA

requires that employers

> furnish each employee with a statement with every payment of wages, listing the
> following:  the dates of work covered by that payment of wages; name of employee;
> name of employer; address and phone number of employer; rate or rates of pay and basis
> thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other;
> gross wages; deductions; allowances, if any, claimed as part of the minimum wage; . . .
> [and] [f]or all employees who are not exempt from overtime compensation as established
> in the commissioner's minimum wage orders or otherwise provided by New York state
> law or regulation, the statement shall include the regular hourly rate or rates of pay; the
> overtime rate or rates of pay; the number of regular hours worked, and the number of
> overtime hours worked.

N.Y. Lab. Law § 195(3).

        The sample paycheck attached as Exhibit A to the SAC does not list any rate of

pay – whether regular or overtime – does not list a tip credit allowance, and does not disclose net

versus gross wages, all as required by the WTPA.  <u>See</u> <u>Thompson v. Elev8 Ctr. New York, LLC</u>,

No. 20-CIV-9581PGGJLC, 2023 WL 6311591, at *6 (S.D.N.Y. Sept. 28, 2023) (noting that the

wage notice proffered by defendants in support of their motion to dismiss "tends to support

Plaintiffs' claims," because it lists a pay rate but does not list any "overtime pay rate"); <u>Inclan v.</u>

<u>New York Hosp. Grp., Inc.</u>, 95 F. Supp. 3d 490, 502 (S.D.N.Y. 2015) (granting statutory damages

under the WTPA where wage statements listed the amount of tips earned per pay period but "did

not show the total amount of the tip credit allowance taken nor the employee's gross wages

before tip credit allowance"); <u>Orellana v. One If By Land Rest. LLC</u>, No. 18-CV-7865 (VSB),

2020 WL 5768433, at *13 (S.D.N.Y. Sept. 27, 2020) (finding that "wage statements . . . do not

conform to the WTPA's requirements . . . [where they] include the amount of tips earned, and the total tip credit retained for the pay period . . . [but] do not indicate the tip credit rate claimed as an allowance to the regular minimum wage").

And even where an employee could independently calculate his or her wages, an employee's

> recollection of the approximate time that [he or she] worked is not a substitute for the actual wage statements required under Section 195 that would have provided [the employee] with precise information, along with the required notices on rate of pay, by which [the employee] . . . could have assessed more promptly and accurately the purported deficiencies in [the employer's] payments.

Lipstein v. 20X Hospitality LLC, No. 22-CV-04812 (JLR) (JW), 2023 WL 6124048, at *10 (S.D.N.Y. Sept. 19, 2023) (plaintiff "received paystubs that provided at least the amount he was paid . . . [and] [t]herefore . . . could calculate his wages to see if [d]efendants were complying with the law and raise any issues"; this fact did not negate and require dismissal of plaintiff's WTPA claims, however) (internal citation omitted).

In sum, the sample paycheck provided by Plaintiffs supports, rather than undermines, their claimed WTPA violations. In any event, the SAC's allegations regarding WTPA violations are not limited to the attached paycheck.

For example, the SAC alleges that "Defendants regularly [paid] Plaintiff Torres for multiple weeks of work on a single paycheck, well after seven days of the end of the week in which the wages were earned." (SAC (Dkt. No. 66) ¶ 52) Under NYLL § 191(a)(i), "[a] manual worker [such as Torres] shall be paid weekly and not later than seven calendar days after the end of the week in which the wages are earned." N.Y. Lab. Law § 191(1)(a). Courts in this Circuit have found that the "delay of payment [alleged here], in and of itself, constitutes a concrete harm that suffices for purposes of Article III." See Charles v. United States of Aritzia, Inc., 23-CV-09389 (MMG), 2024 WL 4167502, *2 (S.D.N.Y. Sept. 12, 2024) (standing adequately pled

where the alleged "bi-weekly payment structure violated [plaintiff's] right, under Section 191, to receive payment weekly and deprived her of the time value of money which she was owed") (collecting cases).

The SAC also alleges that Defendants had a policy of "shaving time off from the hours that their employees worked."  (SAC (Dkt. No. 66) ¶ 57)  As discussed below, such a practice constitutes "concrete, downstream" harm that is facilitated by the use of paychecks that are not in compliance with the WTPA.  Gordon v. Riverdale SNF, LLC, 24 Civ. 2612 (KPF), 2025 WL 2390727, *13 (S.D.N.Y. Aug. 18, 2025) ("Plaintiffs allege that the wage statements were inaccurate in that they did not report the correct amount of time worked, which prevented [plaintiffs] from discovering underpayments earlier and enabled their employer to continue to delay payment of proper wages.  That is sufficient to allege a concrete injury at this stage of the litigation.") (citing Kaur v. Natasha Accessories Ltd., No. 23-CV-6948 (JPO), 2024 WL 3429129, at *4 (S.D.N.Y. July 16, 2024) (finding injury-in-fact established where plaintiff's "wage statements showed fewer hours than what [she] actually worked, which prevented [her] from determining and seeking payment for the precise amount of [her] unpaid wages")).

Finally, in opposing Defendants' motion to dismiss, Plaintiffs have submitted additional sample paychecks for Plaintiff Yuwono that do not comply with the WTPA.  (See C.K. Lee Decl., Ex. 1, (Dkt. No. 76-1))  The additional paychecks submitted by Plaintiffs lack any specification of hours worked – whether regular or overtime – and list no rates of pay.  They instead reflect a flat sum paid to Plaintiff Yuwono with an indication of the pay period.  (Id. at 2-3)

Accordingly, accepting as true the SAC's well pled allegations, and considering the exhibits attached to the SAC as well as the additional exhibits submitted in connection with

Defendants' motion, the Court concludes that Plaintiffs have plausibly alleged a WTPA

violation.

> **B.      Whether the SAC Plausibly Alleges that Plaintiffs Suffered Concrete
> and Particularized Injuries in Connection with Defendants' Failure
> <u>to Provide WTPA-Compliant Wage Notices and Wage Statements</u>**

Defendants contend that Plaintiffs' claim of monetary harm is too speculative and

attenuated to demonstrate the injury-in-fact necessary to support Article III standing.  (Def. Br.

(Dkt. No. 73) at 8-9)

Section 195(1) of the WTPA requires employers to provide employees with a

notice at the time of hiring containing "the rate or rates of pay and basis thereof, whether paid by

the hour, shift, day, week, salary, piece, commission, or other; [and] allowances, if any, claimed

as part of the minimum wage, including tip, meal, or lodging allowances."  N.Y. Lab. Law

§ 195(1)(a).

Similarly, Section 195(3) requires employers to provide employees "with every

payment of wages" certain information, including

> the dates of work covered by that payment of wages; name of employee; name of
> employer; address and phone number of employer; rate or rates of pay and basis
> thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or
> other; gross wages; deductions; [and] allowances, if any, claimed as part of the
> minimum wage. . . .

N.Y. Lab. Law § 195(3).

Employers who do not comply with Sections 195(1) and (3) may be liable for

damages.  <u>See</u> N.Y. Lab. Law § 198(1-b) (authorizing damages where an employer has not

complied with Section 195(1)); N.Y. Lab. Law § 198(1-d) (authorizing damages where an

employer has not complied with Section 195(3)).

"'The WTPA was enacted to further protect an employee's concrete interest in

being paid what he or she is owed under the NYLL.'"  <u>Isayeva v. Diamond Braces</u>, No. 22 CIV.

4575 (KPF), 2024 WL 1053349, at *16 (S.D.N.Y. Mar. 11, 2024) (quoting <u>Bueno v. Buzinover</u>, No. 22 Civ. 2216 (PAE) (KHP), 2023 WL 2387113, at *3 (S.D.N.Y. Mar. 7, 2023)). "'The written notices mandated under the WTPA serve as a means of apprising employees of their rights and of their employer's obligations towards them, empowering employees to advocate for themselves.'" <u>Id.</u> (quoting <u>Bueno</u>, 2023 WL 2387113, at *3) (internal quotation marks omitted).

Here, the SAC alleges more than mere violations of these statutory provisions. The SAC instead alleges monetary harms plausibly linked to Defendants' failure to provide accurate wage notices and wage statements, including the "delayed payment of all proper wages owed to Plaintiffs and Class members," and the non-payment of wages for "actual hours worked, resulting in unpaid wages and overtime premiums." (SAC (Dkt. No. 66) ¶¶ 57, 69-70).

According to the SAC, Defendants did not provide wage statements that "account[ed] for all hours worked" and that "properly inform[ed] Plaintiffs and Class members of their pay rates." (<u>Id.</u> ¶ 69) The alleged failure to provide wage statements that accounted for all hours worked assisted Defendants in their time-shaving scheme, because it obfuscated the total number of hours Plaintiffs had actually worked. (<u>Id.</u>) The SAC further alleges that the wage statements Defendants provided did not clearly indicate the tip credit allowance for each pay period. (<u>Id.</u> ¶¶ 28, 59) The failure to provide wage statements that listed all hours worked, proper overtime rates, and tip credit allowance information prevented Plaintiffs from "determin[ing] [at that time] whether they were underpaid or not." (<u>Id.</u> ¶ 70) Defendants' alleged WTPA violations therefore resulted in "delayed payment of all proper wages owed to Plaintiffs and Class members," and hindered Plaintiffs' ability to discover the extent of Defendants' wrongdoing and to advocate for themselves. (<u>Id.</u> ¶ 68-69) Relevant case law indicates that these allegations are sufficient to demonstrate standing.

In <u>Guthrie v. Rainbow Fencing Inc.</u>, 113 F.4th 300, 306 (2d Cir. 2024), the Second Circuit reiterated that "'a plaintiff has standing to bring a claim for monetary damages following a statutory violation only when he can show a current or past harm <u>beyond</u> <u>the</u> <u>statutory</u> <u>violation</u> <u>itself</u>.'" <u>Id.</u> (emphasis in <u>Guthrie</u>) (quoting <u>Harty v. W. Point Realty, Inc.</u>, 28 F.4th 435, 443 (2d Cir. 2022)).  Accordingly, to establish standing for purposes of a WTPA claim, "a plaintiff must show some causal connection between the lack of accurate notices and the downstream harm." <u>Id.</u> at 308.

In <u>Guthrie</u>, the Second Circuit found that plaintiff did not adequately allege an injury-in-fact because he "'fail[ed] to link the general harms an employee <u>might</u> experience to any harms that Mr. Guthrie <u>did</u>, in fact, experience.'" <u>Id.</u> at 311 (emphasis in original) (quoting <u>Guthrie v. Rainbow Fencing Inc.</u>, No. 21-CV-5929 (KAM)(RML), 2023 WL 2206568, at *4 (E.D.N.Y. Feb. 24, 2023)).  In reaching this conclusion, the court distinguished the facts in <u>Guthrie</u> from cases in which a "plaintiff-employee <u>may</u> have suffered an injury-in-fact sufficient to establish standing when, for example, inaccurate or noncompliant notices prevented the employee from obtaining full payment of wages in a timely fashion." <u>Id.</u> at 309 (emphasis in original).

Following <u>Guthrie</u>, in <u>Ortiz v. Consol. Edison Co. of N.Y., Inc.</u>, 22 Civ. 8957 (JLR) (GS), 2025 WL 2588953, at *36 (S.D.N.Y. Aug. 8, 2025), <u>report</u> <u>and</u> <u>recommendation</u> <u>adopted</u> <u>as</u> <u>modified</u>, No. 1:22-CV-08957 (JLR) (GS), 2025 WL 2717309 (S.D.N.Y. Sept. 24, 2025),  the court found that plaintiffs "explicitly and plausibly pled a causal connection between the alleged violations of the NYLL's [WTPA] requirements and injuries they . . . suffered as a result," by alleging that defendants did not provide "Notices of Pay Rate" or accurate wage statements and, as a result, "[p]laintiffs [were] prevented from, <u>inter</u> <u>alia</u>:  (i) realizing their true

hours worked; (ii) realizing that they were underpaid; and (iii) taking appropriate action to obtain the payments due to them." Id. (internal quotation marks and citation omitted).

And in Lambert v. New Start Capital LLC, 1:24-cv-8055-GHW, 2025 WL 2295254, at *12 (S.D.N.Y. Aug. 7, 2025), the court found that plaintiffs plausibly alleged a concrete injury-in-fact resulting from Defendants' failure to provide accurate wage statements by alleging that the wage statements "did not include the actual number of hours worked, including the number of overtime hours worked, and thus omitted pay for overtime hours." Id. (emphasis in original) (internal quotation marks and citation omitted). In that case, plaintiffs further alleged that the inaccurate pay stubs "effectively concealed from [plaintiffs], or interfered with [their] ability to identify and assess the wage violations," which "prevented [plaintiffs] from determining and seeking payment for the precise amount of [their] unpaid wages." Id. (second and fourth alterations in original) (internal quotation marks and citation omitted).

In Thompson v. Elev8 Ctr. N.Y. LLC, No. 20CIV9581PGGJLC, 2023 WL 6311591 (S.D.N.Y. Sept. 28, 2023) this Court found – on facts similar to those alleged here – that Plaintiff's WTPA claims survived a motion to dismiss. There,

> "[p]laintiffs not only allege[d] that defendants willfully operated their business with a policy of not providing proper wage notices or wage statements, they specifically allege[d] that these failures actually harmed them by depriving them of the ability to contest wage calculations and to further delay providing proper compensation to low wage earners, resulting in delayed payment of all proper wages."

Id. at *6 (quoting Thompson v. Elev8 Ctr. New York, LLC, No. 20CV9581PGGJLC, 2023 WL 4556045, at *9 (S.D.N.Y. July 17, 2023) (internal quotation marks omitted)). This Court adopted the Magistrate Judge's conclusion that "'the [Complaint] sufficiently sets forth a "monetary injury" stemming from the alleged statutory violations – i.e. "delay" in "proper

17

compensation" – [and accordingly,] the Court has jurisdiction to consider these claims.'" Id.

(quoting Thompson, 2023 WL 4556045 at *9) (second alteration in original).

Similarly, in Isayeva v. Diamond Braces, No. 22 CIV. 4575 (KPF), 2024 WL

1053349 (S.D.N.Y. Mar. 11, 2024), the court denied defendant's motion to dismiss plaintiffs'

NYLL § 195(3) claim where

> [p]laintiffs allege injury arising out of Defendants' inaccurate reporting of the
> hours worked by [p]laintiffs, which reporting obfuscated the fact of Defendants'
> alleged time-shaving and hindered [p]laintiffs' ability, at the time they were paid,
> to discover their underpayment and advocate for themselves. . . . [T]hese specific
> injuries, "are of a different class of harm from those alleged in TransUnion and
> Maddox," given that they implicate the broader issue of a plaintiff's nonpayment
> or underpayment of wages, rather than plaintiff's technical statutory entitlement to
> receive notices on any given cadence.

Id. at *17 (quoting Lin v. Bund Dumpling House Inc., No. 22 Civ. 6989 (EK) (RML), 2023 WL

7688886, at *8 (E.D.N.Y. Sept. 26, 2023)).

Finally, in Metcalf v. TransPerfect Translations Int'l, Inc., No. 19 CIV. 10104

(ER) (KHP), 2023 WL 2674743, at *4 (S.D.N.Y. Mar. 29, 2023), the court found standing to

assert a WTPA violation where plaintiffs asserted that – due to a change in the law – they

became eligible for overtime compensation, but defendants' wage statements did not reflect that

change and did not "reflect[] their hourly rate of pay, overtime rate of pay, and number of regular

and overtime hours worked." Id. at *2. The wage statements instead merely showed a flat

payment sum. Plaintiffs alleged that, as a result, over a nine-month period they were "denied the

information needed to determine whether they were being underpaid[,] . . . [and] had they been

provided with the required information, they would have been able to determine whether they

were being underpaid and by what amount[.]" Id.

The court concluded that plaintiffs had made "'allegations [that] plausibly suggest

that had [TransPerfect] provided accurate notices and statements, [p]laintiffs . . . would not have

gone underpaid for nearly nine months,' and would now be able to determine whether the retroactive payments are sufficient.  For now, at the pleading stage, '[n]o more is required.'"  Id. at *7 (internal citations and footnote omitted) (alterations and omission in original) (quoting Metcalf v. TransPerfect Translations Int'l, Inc., No. 19CV10104ERKHP, 2022 WL 19300779, at *4 (S.D.N.Y. Nov. 15, 2022)).

This Court concludes that the SAC alleges monetary harm linked to Defendants' non-compliant wage notices and wage statements.  Plaintiffs thus allege more than a mere statutory violation, and their allegations suffice to plead a concrete injury-in-fact at the motion to dismiss stage.  See Francisco v. Exclusive Management Solution Group, Inc., 24-CV-3928 (AT) (RWL), 2025 WL 1982943, at *11 (S.D.N.Y. July 7, 2025) (standing adequately pled where "[p]laintiffs allege[d] that the wage notices and statements . . . did not list the hours that they had actually worked," rendering plaintiffs "unable to 'discern whether the salary they received each week correctly reflected the amount they were due'") (quoting Cano v. Tremson Recycling LLC, No. 24-CV-1612 (JGK) (RWL), 2025 WL 964552, at *11 (S.D.N.Y. Mar. 14, 2025)); Cortez v. Brand Name 99 Cents & Up Corp., 24-cv-5262 (LJL), 2025 WL 1251297, at *6 (S.D.N.Y. Apr. 30, 2025) (standing adequately pled where plaintiff alleged that the failure to provide wage notices and accurate wage statements prevented him from (1) "accurately calculat[ing] his rightful wages," (2) "fully understand[ing] and assert[ing] his rights regarding his wages," and (3) "afford[ing] necessities such as a car and renting an apartment in a nicer community.") (second and third alterations in original) (internal quotation marks omitted).

### C.    Whether Plaintiffs Must Plead a Harm
####       Distinct From Underpayment of Wages

Defendants argue that Plaintiffs' WTPA claims must be dismissed because the monetary harm Plaintiffs allege is not distinct from the monetary harm flowing from their FLSA

and NYLL minimum wage, overtime, and spread of hours claims.  (See Def. Br. (Dkt. No. 73) at

9-10)  Defendants contend that, as a result, Plaintiffs have not adequately pled standing for

purposes of their WTPA claims.  (Id. at 9 ("Plaintiffs do not allege any actual damages traceable

to their WTPA claims separate and apart from the monetary damages which Plaintiffs already

seek on their other FLSA and NYLL claims.") (emphasis in original))

        In Guthrie, however, the Second Circuit explicitly rejected this argument, holding

that – to establish standing for purposes of a WTPA claim – a plaintiff need not establish "an

injury greater than [their employers'] minimum wage, overtime, and spread-of-hours wage

violations."  Guthrie, 113 F.4th at 309 (alteration in original) (internal quotation marks and

citation omitted).

        Accordingly, in order to plead standing for purposes of their WTPA claim,

Plaintiffs need not allege a harm that is distinct from underpayment of wages.[5]

---

[5]  In concluding that the SAC adequately pleads standing, the Court has not relied on Plaintiffs'
allegations – presented for the first time in their opposition brief – that "Defendants' failure to
provide proper wage statements had the direct financial impact of reducing Plaintiffs' and Class
members entitlement to social security benefits."  In their opposition brief, Plaintiffs contend that
this "direct financial impact" constitutes a concrete, downstream harm sufficient to confer
standing.  (Pltf. Opp. (Dkt. No. 75) at 18)  Allegations raised for the first time in an opposition
brief cannot defeat a motion to dismiss, because an opposition brief does not amend a complaint.
See Capers v. Kirby Forensic Psychiatric Ctr., No. 13-CV-6953(AJN), 2016 WL 817452, at *2
(S.D.N.Y. Feb. 25, 2016) ("'It is axiomatic that the Complaint cannot be amended by the briefs
in opposition to a motion to dismiss.'") (quoting O'Brien v. Nat'l Prop. Analysts Partners, 719 F.
Supp. 222, 229 (S.D.N.Y. 1989)).

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss the Second Amended

Complaint is denied.  The Clerk of Court is directed to terminate the motion (Dkt. No. 71).

Dated: New York, New York
       September 30, 2025

                                   SO ORDERED.

                                   _Paul G. Gardephe_
                                   Paul G. Gardephe
                                   United States District Judge

21